IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   Criminal No. 20-218 |
| RAMON S. ARAIZA-VEGA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is the Government's motion pursuant to 18 U.S.C. § 3145(a)(1) seeking revocation of a release order issued by United States Magistrate Judge Erik J. Markovich in the District of Arizona, which is opposed by Defendant Ramon S. Araiza-Vega. (*See* Docket Nos. 146, 209, 304, 316). After careful consideration of the parties' positions, review of the detention hearing transcript, the referenced Pretrial Services Report and additional evidence submitted by the parties to supplement the record, (Docket Nos. 209-1, 259, 304-1, 316-1, 316-2), the Government's motion will be granted and detention will be ordered. The following includes the Court's findings of fact and statement of the reasons for detention as required by 18 U.S.C. § 3142(i)(1).

**I.   BACKGROUND**

On August 25, 2020, Defendant and 26 other co-defendants were charged in Count One of the Indictment in this case with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, for conduct occurring from in and around October 2018 until in and around June 2020. (Docket No. 3). An arrest warrant was issued for Defendant on that same date. (Docket No. 11).

1

As outlined in the Government's motion, Defendant surrendered to law enforcement on or about September 3, 2020 in the District of Arizona, he had an initial appearance there and was ordered to be detained pending a detention hearing. (Docket No. 146 at 2). On September 11, 2020, a detention hearing was held before Magistrate Judge Markovich at which he denied the Government's request that Defendant be detained pending trial and ordered his release on an unsecured personal recognizance bond with conditions.[1] (Docket Nos. 259 at 5; 259-1). At the Government's request, Magistrate Judge Markovich stayed his release order until 5 p.m. PST that day to permit the Government to file a motion to revoke the release order. (Docket No. 259 at 5).

On September 11, 2020, the Government filed with this Court an emergency motion for a stay and revocation of the release order pursuant to 18 U.S.C. § 3145(a)(1). (Docket No. 146). In sum, the Government represented that Defendant "is subject to a rebuttable presumption in favor of detention. He is unable to rebut it. The charges against him are serious, his involvement in the conspiracy was significant, and the weight of the evidence is strong. Defendant's drug-trafficking activity represents his only tie to the Pittsburgh area, where this case is pending. [Defendant's] release would pose a serious danger to the community. It would also give rise to an intolerable risk of flight, which could be aided by several conspirators who have thus far managed to evade law enforcement." (*Id.* at 11). On that same date, this Court granted the Government's motion as to its request that the release order be stayed and further ordered that Defendant shall remain in the custody of the United States Marshals Service and be transported forthwith to the Western District of Pennsylvania for further proceedings on the Government's request that he be detained pending trial or other disposition. (Docket No. 149).

---

1   The release was conditioned on, *inter alia*, Defendant remaining in Arizona, except to travel to and from this District as required for court appearances. (*See* Docket No. 259-1).

On September 23, 2020, Defendant filed a motion for detention hearing, requesting that the Court schedule a hearing as soon as possible upon Defendant's arrival in this District. (Docket No. 209). Defendant submits that the Court should reaffirm the release order because he is not a danger to the community or a flight risk for the following reasons: he is employed as a commercial truck driver; he has no prior criminal history; he does not use drugs or alcohol; he turned himself in almost immediately when he learned of the Indictment; although he has ties to Mexico, he is a lawful permanent resident who has no desire to lose his legal status in the United States; despite having no ties to this District, he has strong ties to the United States, as his wife of five years is a United States citizen and they have two young children; he has many other relatives who are United States citizens; and although he regularly travels to Mexico, such travel is common for individuals like him who live in the southern part of Arizona. (*Id.* at 2-4, ¶¶ 2-5, 7).

Following Defendant's arrival in this District, he was arraigned on October 9, 2020 and pled not guilty to the charge. (Docket Nos. 244, 245). The Court then held telephone conferences with counsel on October 13 and October 16, 2020 to facilitate the scheduling of a detention hearing, which was set to occur on October 29, 2020. (Docket No. 261). Counsel subsequently informed the Court that they intended to submit the matter of the Government's motion to revoke the release order to the Court by written proffer and evidence with no live testimony. (Docket No. 278). As such, the Court ordered the parties to file their written proffers or other evidence for the Court's consideration, along with any supplemental brief in support of their respective position by October 29, 2020. (*Id.*). Given the parties' intent to proceed in that manner, the detention hearing scheduled on October 29th was cancelled. (*Id.*).

On October 28, 2020, Defendant filed his Supplemental Brief in Support of his Motion for Release from Custody Pending Trial. (Docket No. 304). Therein, Defendant reiterates that he

is not a danger to the community or a flight risk for the reasons he previously outlined. (*Id.* at 7-8). Defendant also supplied a letter from his employer, G & A Transport Inc., indicating that he has worked as a truck driver for the company for approximately three years and that he is welcome to return to work there if released.[2] (Docket No. 304-1).

On October 29, 2020, the Government filed is Memorandum in Support of Continued Detention, in which it argues that Defendant's pretrial detention is warranted because he is both a danger to the community and a flight risk and there are no conditions that can be imposed to ameliorate either of those risks. (Docket No. 316, ¶¶ 8, 18, 19). According to the Government, even if Defendant rebutted the applicable presumption of pretrial detention, which he has not, the relevant factors in 18 U.S.C. § 3142(g) mandate detention. (*Id.*, ¶ 13). In support of its position, the Government maintains that it has strong evidence demonstrating that Defendant was part of a well-organized, logistically sophisticated drug-trafficking organization ("DTO") which moved large quantities of cocaine across state lines and the border between the United States and Mexico, as shown by an excerpt from a Title III wiretap affidavit from the investigation (the "wiretap affidavit"). (Docket Nos. 316, ¶¶ 15, 16; 316-1). For Defendant's part, he transported narcotics, including 13 kilograms of cocaine on May 5, 2020, which he delivered to a co-conspirator in exchange for $160,000. (Docket No. 316, ¶¶ 15.e, 15.i). As such, the Government contends that Defendant is a danger to the community because he used his occupation as a tractor-trailer driver

---

2   In advocating for release, Defendant also notes that two Magistrates Judges in this District have released co-defendants Dino Aquiline, Sherita James, John W. Montgomery, Rachel M. Novalesi, Steven L. Trent, Jr. and Kevin Thomas on unsecured appearance bonds in varying amounts with conditions. (Docket No. 304 at 4-5). According to Defendant, given the release of these co-defendants, "surely there are some conditions that can be fashioned for his release that will reasonably assure the safety of the community." (*Id.* at 5). Defendant's argument concerning the release status of these co-defendants is unavailing, as the Court is required to make an individualized assessment of Defendant's eligibility for pretrial release or detention. *See United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *6 (W.D. Pa. Feb. 22, 2018) (quoting *United States v. Aponte*, Crim. No. 17-00267-01, 2018 WL 646143, at *3 (W.D. Pa. Jan. 31, 2018) ("[T]he pre-trial release of a codefendant has no bearing on whether or not a defendant should be released or detained and is not a factor the Court should properly consider under the Bail Reform Act.")).

to commit a very serious drug trafficking offense, but he asks to return to that same employment if released. (*Id.* ¶ 19, 26). The Government also argues that Defendant is a flight risk because he faces a substantial penalty and may seek refuge in his home country of Mexico, where he has an extensive record of travel as reflected on records compiled by the United States Department of Homeland Security, which are attached to the Government's Memorandum. (*Id.* ¶¶ 19, 23, 24; Docket No. 316-2).

After reviewing the transcript of the detention hearing before Magistrate Judge Markovich and considering the Pretrial Services Report, as well as the supplemental information and evidence and the arguments of counsel, the Court concludes that there is no condition or combination of conditions which will reasonably assure Defendant's appearance as required and the safety of the community if he is released.

## II.     LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. Pursuant to 18 U.S.C. § 3145(a)(1), "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release. . . ." A district court exercises *de novo* review over a release order entered by a magistrate judge. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "De novo review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009

WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also Bastianelli*, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record."). A district court may incorporate the transcript of the hearing before the magistrate judge and does so here. *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). A district court "may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings."[3] *Burgess*, 2009 WL 2038148, at *1 (citation omitted).

As noted, the availability of pretrial release is controlled by the BRA, which provides that a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. §3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g) factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

---

3   In addition to the supplemental evidence submitted by the parties, the Court has considered the Pretrial Services Report prepared in the District of Arizona, a copy of which is attached to Defendant's motion for detention hearing. (*See* Docket No. 209-1). Neither party has objected to the contents of this Report.

> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, among others, to cases in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence . . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light and has

been construed as easy to meet.[4]  *Chagra*, 850 F. Supp. at 357 (citation omitted).  If rebutted, however, the presumption does not disappear but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."  *Id.* at 358 (citation omitted).  If the defendant rebuts the presumption, the burden of persuasion remains with the Government.  *Id.* at 357.  Thus, the Government bears the burden of proving that the defendant presents either a risk of flight or a danger to the community.[5]

### III.  DISCUSSION

As an initial matter, Defendant is charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, which carries a penalty of not less than ten years and up to life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A)(ii).  This charge raises the rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  Defendant does not dispute that the rebuttable presumption applies in this case.  (*See* Docket Nos. 209 at 2, ¶ 1; 304 at 3).

Defendant attempts to rebut this presumption by pointing out that he did not flee the United States after he was detained and subsequently released following a search of his tractor-trailer which resulted in federal agents recovering a box containing $160,000 on May 5, 2020.  (Docket No. 304 at 2).  Instead, Defendant continued working for G & A Transports driving his tractor-

---

[4]  To rebut the presumption that the defendant presents a danger to the community, "he must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged."  *Chagra*, 850 F. Supp. at 358 (citations omitted).  This may be accomplished through "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'"  *Suppa*, 799 F.2d at 120 (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

[5]  The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial.  *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  The Government must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community.  *Delker*, 757 F.2d at 1399.

trailer for four more months until a warrant was issued for his arrest in this case. (*Id.*). There again, Defendant points out that he did not flee the United States, but rather self-surrendered to law enforcement on September 4, 2020. (Docket Nos. 209 at 2, ¶ 3; 304 at 2-3). Defendant admits that he "travels to Mexico on a regular basis," (Docket No. 209 at 3), but posits that such travel for shopping, dining and vacationing is common for individuals who live near the border. (*Id.* at 3-4; Docket No. 304 at 5-6). Defendant further explains that he will not flee the United States because he has no desire to lose his status as a lawful permanent resident here. (Docket Nos. 209 at 2, ¶ 4; 304 at 5). Additionally, Defendant submits that he has ties to the community in Arizona where he resides with his wife and children, he has many other relatives in Arizona, he has no substance abuse or mental health issues, he has no criminal history, he has been employed as a commercial truck driver for three years with G & A Transport, and that company is willing to continue to employ him if he is released. (Docket Nos. 209 at 2-4, ¶¶ 2, 5, 7; 304 at 7-8; 304-1).

As to Defendant's travel, he initially admits that he "travels to Mexico on a regular basis," but subsequently says that he "sometimes" travels to Mexico with his family. (Docket Nos. 209 at 3; 304 at 5). According to the Pretrial Services Report, Defendant travels to Mexico two or three times per month. (Docket No. 209-1 at 2). As noted, the Government supplied records compiled by the United States Department of Homeland Security which show Defendant's inbound travel to the United States from Mexico for the period from December 26, 2017 to April 25, 2020. (Docket No. 316-2). According to those records, Defendant traveled to and from Mexico 8 times between December 26, 2017 and December 27, 2018, 29 times between January 3, 2019 and December 26, 2019, and 11 times between January 3, 2020 and April 25, 2020, or a total of 48 times in 2½ years. (*See id.*). In this Court's estimation, 48 international trips in 2½ years qualify as frequent international travel. While the Court accepts that individuals who live in

close proximity to the border may travel to Mexico to shop, dine and vacation as Defendant notes, the Court agrees with others which have held that frequent international travel, in conjunction with other relevant factors, supports a finding that an individual is a flight risk.[6] *See e.g., United States v. Yusuf*, Crim. No. 4:19-CR-271-SDJ, 2020 WL 607105, at *6 (E.D. Tex. Feb. 7, 2020) (concluding the defendant was a flight risk because he represented his travel as infrequent but he had taken at least thirteen international trips in the past four years, which the court observed cannot be accurately described as "infrequent" travel "[b]y any metric"); *United States v. Ortiz*, Crim. No. 11-251-08, 2013 WL 247226, at *7 (E.D. Pa. Jan. 23, 2013) (concluding that a defendant charged with serious drug offenses who lived in Puerto Rico and traveled to Mexico on three separate occasions in the eighteen months preceding his arrest was a flight risk).

Even if Defendant's proffered information and evidence satisfies his burden to rebut the applicable presumption, the Court nonetheless concludes that the Government has presented clear and convincing evidence that Defendant is a danger to the safety of the community and has proven by a preponderance of the evidence that he is a flight risk. In reaching these decisions, the Court has conducted an independent examination of the record as a whole and balanced the four factors set forth in 18 U.S.C. § 3142(g). For reasons that follow, the Court finds that the available information and proffered evidence on each of those factors weigh in favor of detention.

A. **Nature and Circumstances of the Offense Charged**

The Government submits that this case arises from the investigation of a DTO which was

---

[6] Related to Defendant's travel and/or ties to Mexico, it bears noting that his claim that the Government contends he is a flight risk because of his Mexican heritage is entirely unfounded based on the record before the Court. (*See* Docket No. 304 at 5, 6). To be clear, the Government does not advance or in any way insinuate such an argument in its briefing papers, and Defendant's heritage and ethnicity are wholly irrelevant to the detention analysis herein. What is relevant, however, is that Defendant faces a serious charge which carries a substantial penalty, providing him strong motivation to flee as will be discussed in more detail below. Those considerations, combined with Defendant's frequent international travel, family ties to Mexico, and absence of any ties to this District, cause this Court to conclude that Defendant is a flight risk.

responsible for distributing more than 100 kilograms of cocaine that was obtained from a source of supply in Mexico and sold by members of the organization in Pennsylvania, California, Arizona and other states. (Docket No. 316, ¶¶ 14, 15). For Defendant's part, he allegedly transported narcotics for the DTO, including 13 kilograms of cocaine on May 5, 2020, which he delivered to a co-conspirator in exchange for $160,000. (*Id.* ¶¶ 15.e, 15.i, 16). As a result of Defendant's alleged involvement, he has been indicted for a very serious controlled substance offense – that is, conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine. (Docket No. 3). If convicted, he faces a statutory mandatory term of not less than 10 years and up to life imprisonment. In light of this, the nature and circumstances of the offense charged weigh strongly in favor of pretrial detention.

### B. Weight of the Evidence

As a general matter, the Court observes that the weight of the evidence against Defendant is strong, as reflected by the grand jury's return of the Indictment which establishes probable cause that the offense occurred. More specifically, while Defendant is presumed innocent of the charged offense, review of the wiretap affidavit reveals strong evidence that Defendant was not only involved in the conspiracy, but he played an important role in the DTO.

As detailed in the wiretap affidavit, on May 4, 2020, agents intercepted calls between an unknown male, who was utilizing a Mexican telephone number, and co-defendant Manuel Silvestre, who was a Los Angeles based distributor of cocaine for the DTO. (Docket No. 316-1, ¶ 83). The unknown male informed Silvestre that a truck with kilograms of cocaine would arrive on May 5, 2020 and that there would be an exchange between Silvestre and the truck driver. (*Id.*, ¶ 84). In a subsequent call on May 4th, Silvestre learned that two drivers would each transport 13 kilogram of cocaine, for a total of 26 kilograms. (*Id.*, ¶¶ 85, 86). Silvestre was informed that he

would receive two boxes containing the cocaine from one truck driver. (*Id.*, ¶ 86).

On May 5, 2020, agents intercepted a call between Silvestre and an unknown male, later determined to be co-defendant Roberto Egurrola-Vasquez, during which they discussed that the exchange of kilograms of cocaine and United States currency would occur that morning at a location the co-conspirators had historically utilized. (Docket No. 316-1, ¶¶ 87, 88). In a later call, Egurrola-Vasquez advised Silvestre that he would give the box of cocaine that he was going to transport to the other driver, and Silvestre would receive both boxes (each containing approximately 13 kilograms of cocaine) from the other driver. (*Id.*, ¶¶ 89, 90). In another call, Silvestre asked Egurrola-Vasquez to have the other driver contact him directly. (*Id.*, ¶¶ 91, 92). The other driver was determined to be Defendant.

After that, agents intercepted an incoming call from Defendant to Silvestre, during which Defendant indicated that he would be at the meeting location in approximately 15 minutes. (Docket No. 316-1, ¶¶ 93, 94). Agents conducting surveillance subsequently observed Silvestre pull behind Defendant's tractor-trailer and saw the two men meet. (*Id.*, ¶ 97). Agents observed two boxes being loaded into Silvestre's vehicle and Defendant received a box from Silvestre that was placed in the cab of his tractor-trailer. (*Id.*). Law enforcement from the Los Angeles Police Department detained Defendant and Silvestre and a search of Silvestre's vehicle revealed 26 kilograms of cocaine contained in the boxes, while a search of Defendant's tractor-trailer uncovered $160,000 in United States currency. (*Id.*).

In subsequent intercepted communications, an unknown male and co-Defendant Jamaal Maragh discussed whether they were at risk of apprehension due to the arrests of Defendant and Silvestre and the seizure of the cellular telephones they had been using. (Docket No. 316-1, ¶¶ 99-101). The unknown male reassured Maragh that they were not at risk, in part, because

Defendant commonly deleted incriminating messages from his cellular telephone. (*Id.*, ¶ 101). The unknown male further advised Maragh that he believed Silvestre had fled to Mexico following his arrest. (*Id.*, ¶¶ 106, 107).

The foregoing demonstrates that the Government possesses strong evidence of Defendant's involvement in the DTO, particularly as to the events of May 5, 2020. However, the intercepted communication indicating that Defendant commonly deleted incriminating messages from his cellular telephone suggests that his involvement in the May 5th transaction was not his first or only drug trafficking activity for the DTO. In sum, while recognizing that Defendant is presumed innocent of the charged offense, the weight of the evidence against Defendant is substantial and favors pretrial detention.

### C. History and Characteristics of Defendant

As to Defendant's background and characteristics, he is 27 years old, he was born in Mexico and relocated to Arizona in 2015, where he has remained since that time, and he is a lawful permanent resident of the United States.[7] Defendant has been married for five years, his wife is a United States citizen and they have two young children. Defendant's father is deceased, his mother and two siblings are citizens and residents of Mexico and another sibling is a lawful permanent resident of the United States who resides in Arizona. Defendant reported that he travels to Mexico two or three times per month to visit family.

Defendant is in good physical and mental health and, to his credit, he has no criminal history and no current issues with substance abuse. As discussed, Defendant has worked full time as a commercial truck driver for three years, and his employer indicated that his employment would

---

[7] Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are detailed in the Pretrial Services Report. (*See* Docket No. 209-1).

continue if he is released. Although Defendant's solid employment is commendable, it is troubling that he appears to have used his occupation in furtherance of a serious drug trafficking offense.

As to community ties, Defendant has no ties whatsoever to the Western District of Pennsylvania. Although Defendant's immediate family lives in Arizona, he also has family ties to Mexico, as his mother and two siblings reside there. By his own admission, Defendant travels to Mexico several times per month, which the Court understands may be typical for those who live near the border, but the Government submitted evidence of Defendant's extensive international travel in the past 2½ years. (*See* Docket No. 316-2). In this Court's estimation, Defendant presents a risk of flight, given that he is facing a substantial term of incarceration if convicted, he has no ties to this District, he has a history of frequent international travel and family ties Mexico. *See e.g., Yusuf*, 2020 WL 607105, at *6 (defendant who had taken thirteen international trips in the past four years, which could not be accurately described as "infrequent" travel "[b]y any metric," was deemed to be a flight risk); *Ortiz*, 2013 WL 247226, at *7 (defendant who lived in Puerto Rico and traveled to Mexico on three separate occasions in the eighteen months preceding his arrest was a flight risk).

With regard to risk of flight, it also bears noting that Defendant was allegedly involved in a DTO involving more than 100 kilograms of cocaine and millions of dollars. In light of the nature of the charged conspiracy and the substantial penalty Defendant faces if convicted, this Court is not persuaded that any amount of bond or other means of personal supervision would deter him from fleeing. *See Chagra*, 850 F. Supp. at 359-60 (given that the defendant faced minimum term of 20 years' imprisonment on drug conspiracy charge, the conspiracy involved large sums of cash, and evidence suggested that he had contacts in Mexico related to his illegal drug activities, the court was not satisfied that any possible conditions of release would reasonably assure the

defendant's appearance, as "[e]lectronic monitoring and other means of personal supervision . . . only notify authorities that the defendant is already fleeing").

Overall, when considering Defendant's history and characteristics (most notably, no ties to the Western District of Pennsylvania, frequent international travel, family ties to Mexico and employment at an occupation which he utilized in furtherance of drug trafficking), this factor weighs in favor of pretrial detention.  *See e.g., United States v. Ruiz-Corral*, 338 F. Supp. 2d 1195, 1198 (D. Colo. 2004) (concluding defendant was a flight risk and revoking magistrate judge's release order, despite that defendant was a United States citizen, had no prior felony convictions, was described as a "dutiful employee" who held a job for five years, had ties to the community and agreed to post his home as security for the bond to secure his appearance, where he was indicted for serious drug conspiracy and weapons charges and had significant family ties to Mexico).

### D. Nature and Seriousness of Danger to Any Person or the Community if Released

The final factor requires consideration of the nature and seriousness of danger to any person or the community if Defendant is released.  As to this factor, the Court agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drugs such as cocaine as alleged to have occurred here.  *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs.").  Distribution of Schedule II controlled substances like cocaine have a "high potential for abuse" and that abuse "may lead to

15

severe psychological or physical dependence." *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.

Ultimately, consideration of this factor requires a court to "*predict* whether defendant will engage in drug trafficking if released pending trial." *United States v. Bratcher*, Crim. No. 14-28, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (emphasis in original) (citing *Perry*, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior.")). The Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer engage in criminal activity. *See e.g.*, *Bastianelli*, 2018 WL 1015269, at *8 (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839, *4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity."). Based on the serious nature of the charge here, along with all of the other factors the Court has considered, the Court finds that the weight of the evidence is such that Defendant's release on bond would pose a serious risk of his continued drug trafficking activities. This risk is exacerbated given that Defendant plans to return to his employment as a commercial truck driver, which is the very occupation he utilized in furtherance of serious drug trafficking activity. As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the nature and circumstances of the serious drug offense charged, the strong weight of the evidence against Defendant, his history and characteristics, the nature and seriousness of danger to the community posed by Defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which will reasonably assure that Defendant will not engage in drug trafficking

while on release pending trial or that he will appear as required. Accordingly, detention must be ordered.

## IV. <u>CONCLUSION</u>

Given the Court's finding that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community if he is released, the Court will lift its stay of the order of release entered by Magistrate Judge Markovich in the District of Arizona on September 11, 2020, grant the Government's motion seeking revocation of the release order, revoke Defendant's bond and order that he shall be detained pending trial or other disposition of this matter.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: November 6, 2020


cc/ecf:  All counsel of record
         United States Marshal