IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 20-218-14 |
| RAMON S. ARAIZA-VEGA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Presently before the Court is Defendant Ramon S. Araiza-Vega's counseled Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. Amendment 821 – Part B, which is opposed by the Government. (Docket Nos. 1663, 1677, 1683). After careful consideration of the parties' arguments in light of the prevailing legal standards, Defendant's Motion will be granted, and the Court will exercise its discretion to reduce his sentence, but not to the extent that he seeks.

**I.      BACKGROUND**

Pursuant to a plea agreement, on June 9, 2022, Defendant pled guilty to Count One of the Indictment in this case charging him with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), in violation of 21 U.S.C. § 846. (Docket Nos. 1027, 1029-1). After the presentence investigation report was issued, the Court entered its Tentative Findings and Rulings wherein it determined that Defendant was subject to a term of not less than 10 years to life imprisonment. (Docket No. 1181 at 9). However, because it was determined that Defendant met the criteria for the safety valve, 18 U.S.C. §§ 3553(f)(1)-(5), the Court indicated that it could impose a sentence in accordance with the applicable guidelines without regard to the statutory

1

minimum term of imprisonment. (*Id.*). In calculating the advisory guideline range, the Court determined that Defendant's total offense level was 27. (*Id.*). The Court further found that Defendant had a criminal history score of zero, which resulted in a criminal history category of I. (*Id.*). Based on those findings, Defendant's advisory guideline range was 70 to 87 months' imprisonment. (*Id.* at 9-10).

At the sentencing hearing held on December 19, 2022, Defendant moved for a downward variance, whereas the Government advocated that the Court should impose a sentence within the advisory guideline range. (Docket Nos. 1170, 1216, 1231). Ultimately, the Court denied Defendant's motion for a downward variance, and sentenced him to 70 months' imprisonment followed by a 2-year term of supervised released. (Docket Nos. 1231, 1233). The Court explained why the sentence adequately addressed the nature and circumstances of Defendant's offense, as well as his history and background, and that it was sufficient, but not greater than necessary, to meet the goals of sentencing under the factors in 18 U.S.C. § 3553(a). To that end, the Court commented on the serious nature of Defendant's criminal conduct, which involved his participation in a drug trafficking organization ("DTO") whose members distributed hundreds of kilograms of cocaine. To briefly summarize, the cocaine was obtained from a source of supply in Mexico, and DTO members distributed it in Pennsylvania, California, Arizona and elsewhere. Intercepted communications revealed that the DTO's Mexican source of supply utilized various truck drivers who primarily were based in Arizona to transport multi-kilogram quantities of cocaine to Los Angeles for distribution by other co-conspirators. Defendant was one of the truck drivers who transported kilograms of cocaine on behalf of the DTO. Specifically, Defendant coordinated with another co-defendant truck driver to execute the delivery of 26 kilograms of cocaine to another co-conspirator at a location in Los Angeles on May 5, 2020. The parties

stipulated in the plea agreement that Defendant was responsible for at least 15 kilograms but less than 50 kilograms of cocaine. (Docket No. 1029-1, ¶ C.2). The Court observed that cocaine trafficking activity of this magnitude negatively affects communities and severely impacts individuals who become addicted to such a dangerous controlled substance.

The Court also considered Defendant's personal history and characteristics, including that he had no prior criminal history, he accepted responsibility for his offense by his guilty plea, and he was remorseful for his conduct. The Court further observed that Defendant has a supportive family, and he had steady prior employment and no history of substance abuse.

Additionally, the Court explained that the 70-month sentence of imprisonment was appropriate considering the kinds of sentences available, the advisory guideline range, and the need to avoid sentencing disparities. Finally, the Court explained that the sentence imposed reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, serves the interest of protecting the public from further crimes of Defendant, and meets the goals of first and third-party deterrence.

As noted, Defendant now moves for a sentence reduction based on Amendment 821 to the Guidelines, which the Sentencing Commission determined applies retroactively. (Docket No. 1663, ¶ 3). As Defendant points out, effective November 1, 2023, the Sentencing Commission created Guideline § 4C1.1 to provide for a two-level decrease from the offense level for certain offenders who did not receive any criminal history points. (*Id.*).

Defendant submits that he is eligible for relief under Amendment 821 because he was determined to have zero criminal history points and he otherwise meets the criteria of Guideline § 4C1.1. (Docket No. 1663 at 6). As a result of the two-level decrease, Defendant's total offense level is reduced from 27 to 25. (*Id.*). Based on a total offense level of 25, and a criminal history

category of I, the advisory guideline range is 57 to 71 months' imprisonment, instead of 70 to 87 months as previously computed. (*Id.*). Consequently, Defendant requests that the Court reduce his sentence from 70 months' imprisonment to 57 months. (*Id.* at 6, 12). Defendant contends that a sentence reduction is consistent with the applicable policy statement in Guideline § 1B1.10 and the relevant factors under 18 U.S.C. § 3553(a). (*Id.* at 7-12). Specifically, Defendant maintains that the sentence reduction he seeks is sufficient to meet the goals of sentencing for reasons previously set forth in his Sentencing Memorandum, as well as the fact that he has productively used his time in federal custody and has continued to maintain close contact with his family members.[1] (*Id.* at 7-8).

The Government opposes Defendant's Motion for a sentence reduction. (*See generally* Docket No. 1677). The Government does not dispute that Defendant meets the criteria of Guideline § 4C1.1 and therefore would qualify for a two-level decrease to his offense level. (*Id.* at 4, 7). Accordingly, the Government agrees that Defendant's offense level would drop from 27 to 25, reducing the advisory guideline range from 70 to 87 months' imprisonment to 57 to 71 months. (*Id.* at 4). Despite Defendant's eligibility for a sentence reduction, the Government urges the Court to deny his Motion because the previously imposed sentence of 70 months' imprisonment still falls within the modified guideline range, the relevant § 3553(a) factors do not support a reduction, and the Court previously indicated at sentencing that it would adhere to the

---

1    Defendant also submits that a sentence reduction is warranted because he experienced a harsher term of imprisonment during an appreciable portion of his pretrial detention given the restrictions on movement, communication, visitation, and programming that were implemented in response to the Covid-19 pandemic. (Docket No. 1663 at 9-12). In declining to vary downward on that basis in other cases, this Court noted that the global pandemic compelled all correctional facilities to implement precautions to prevent and mitigate the spread of Covid. While the Court is sympathetic to the conditions that existed within correctional facilities during the pandemic, including those that Defendant faced, such circumstances were not unique to him, as all other detainees in the various facilities were subject to similar Covid mitigation policies and procedures. Accordingly, the Court's decision to exercise its discretion to reduce Defendant's sentence is not based on that factor.

70-month term of imprisonment even if the guidelines were incorrectly computed. (*Id.* at 4, 9-10).

In Reply, Defendant points out that Amendment 821 requires the Court to consider the amended guidelines range and assess the § 3553(a) sentencing factors consistent with the operative legal standard for analyzing whether a sentence reduction is warranted. (Docket No. 1683 at 4). Defendant further highlights his post-sentencing conduct and advocates that his rehabilitative efforts while incarcerated weigh in favor of granting the sentence reduction he seeks. (*Id.* at 6-7).

After considering the parties' respective positions set forth in the briefing and reviewing the record, the Court will exercise its discretion to modestly reduce Defendant's sentence for the reasons explained below.

## II.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see Dillon v. United States,* 560 U.S. 817, 819 (2010) ("A federal court generally 'may not modify a term of imprisonment once it has been imposed.' ") (quoting 18 U.S.C. § 3582(c)(2)). However, § 3582(c)(2) allows for a reduction in the case of a defendant whose sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see Dillon*, 560 U.S. at 825 (observing that § 3582(c)(2) gives courts the power to reduce or modify an otherwise final sentence in circumstances specified by the Sentencing Commission). The "applicable policy statements" referenced in § 3582(c)(2) are those found in § 1B.10 of the Sentencing Guidelines. *See* U.S.S.G. § 1B1.10(a)(1). Additionally, in determining whether a reduction is warranted, § 3582(c)(2) directs the court to

5

"consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(2).

To summarize, a district court must engage in a two-step inquiry to determine whether a sentence reduction is warranted under § 3582(c)(2). *Dillon*, 560 U.S. at 826. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. To that end, Guideline § 1B1.10(b)(1) requires the court to " 'determin[e] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing . . . 'leav[ing] all other guideline application decisions unaffected.' " *Id.* (quoting U.S.S.G. § 1B1.10(b)(1)). Next, "[a]t step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."[2] *Id.*; *see also* U.S.S.G. § 1B1.10, Application Note 1(B)(i) ("Consistent with 18 U.S.C. § 3582(c)(2), the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted. . . .").

### III.  ANALYSIS

The Court now turns to the two-step inquiry to determine whether a sentence reduction is warranted here. Initially, there is no dispute that Defendant is eligible for a sentence modification

---

2  Given that § 3582(c)(2) proceedings are limited in nature, § 1B1.10(b)(2) "confines the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. Accordingly, a court "generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." *Id.* (quoting U.S.S.G. § 1B1.10(b)(2)(A)). "Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range." *Id.* (quoting U.S.S.G. § 1B1.10(b)(2)(B)).

under Amendment 821 because newly created Guideline § 4C1.1 provides for a two-level decrease to the offense level for a zero-point offender, like him, who meets all the criteria of Guideline §§ 4C1.1(a)(1) - (a)(10).  *See* U.S.S.G. § 4C1.1(a) ("If the defendant meets all of the [listed] criteria[3] … decrease the offense level determined under Chapters Two and Three by 2 levels.").  As a result, if Amendment 821 had been in effect when Defendant was sentenced, his total offense level would have been 25, instead of 27.  Based on an offense level of 25, and a criminal history category of I, Defendant's advisory guideline range would have been 57 to 71 months' imprisonment, instead of 70 to 87 months as previously calculated.

Moving on to step two of the inquiry, the Court considers the applicable § 3553(a) factors to determine whether, in its discretion, a reduction is warranted under the circumstances of Defendant's case.  *Dillon*, 560 U.S. at 827; U.S.S.G. § 1B1.10, Application Note 1(B)(i).  In determining whether to exercise its discretion, the Court also considers Defendant's risk to public safety and his post-sentencing conduct.  *See* U.S.S.G. 1B1.10, Application Note 1(B)(ii), (iii) (specifying that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[,]" and "[t]he court may consider [the defendant's] post-sentencing conduct" in determining whether a reduction is warranted).

---

[3] The listed criteria include the following: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.  U.S.S.G. §§ 4C1.1(a)(1) – (a)(10).

As required, once again, the Court has carefully examined the § 3553(a) factors.[4]  First, as to the nature and circumstances of the offense, the Court reiterates that Defendant engaged in serious criminal conduct by conspiring with other members of the DTO to transport a substantial quantity of cocaine for distribution by other conspiracy members.   With that said, to Defendant's credit, his background reveals no prior criminal history, no substance abuse issues, and a steady work record.   (Docket No. 1064, ¶¶ 33-37, 49, 53-55).

Next, the Court considers Defendant's laudable post-sentencing conduct, including the rehabilitative efforts he has undertaken while incarcerated.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)(2).").   As detailed in Defendant's Motion, he has earned certificates in economics and business administration, and he participates in his institution's religious services.[5]   (Docket No. 1663 at 8).   In the Court's estimation, Defendant's post-sentencing rehabilitative efforts are a mitigating factor which supports his request for a sentence reduction.

The Court also considers whether a sentence reduction may pose a danger to the community and concludes that is unlikely in Defendant's particular case.   First, the risk that

---

4    As the Government points out, the Court indicated at the sentencing hearing that it would adhere to the 70-month sentence even if the advisory guideline range was incorrectly computed.  That statement was entirely accurate at the time of Defendant's sentencing.   However, as a result of Amendment 821, the Court is required to follow *Dillon's* framework to determine if Defendant is entitled to a sentence reduction.  To repeat, under that framework, the Court first must determine the amended guidelines range as a result of Amendment 821, and then consider the relevant § 3553(a) factors to determine whether a sentence reduction is warranted under the particular circumstances of the case, which the Court has done herein.

5    Defendant candidly admits that he received an institutional sanction for using a cell phone to call his family.  (Docket No. 1663 at 8).   The Court does not view that singular infraction as weighing against his request for a sentence reduction, given his otherwise commendable efforts at post-sentencing rehabilitation.

Defendant will recidivate is mitigated by the fact that he previously led a law-abiding life, he maintained steady employment, he has no history of substance abuse, and he has a supportive family, with whom he has kept in close contact throughout his incarceration.  (Docket Nos. 1064, ¶¶ 33-37, 49, 53-55; 1663 at 7).  Further, Defendant acknowledges that he is a non-citizen and will be deported upon completion of his sentence.  (*See* Docket No. 1663 at 8).  Consequently, the public will be insulated should Defendant ever fail to conform his conduct to the law in the future.

After considering the relevant § 3553(a) factors, along with Defendant's post-sentencing conduct and the fact that a sentence reduction will not pose a danger to the community, the Court finds that a reduction is warranted but not to the extent he seeks.  *See Chavez-Meza v. United States*, 585 U.S. 109, 116 (2018) (when reducing a sentence, there is no presumption that the judge will choose a point within the new lower Guidelines range that is proportional to the point previously chosen in the older higher Guidelines range); *United States v. Harris*, 793 F. App'x 129, 133 (3d Cir. 2019) ("[T]he Supreme Court has explicitly held that there is no presumption that a new sentence will be proportionally placed in the new Guidelines range at resentencing.  A district court can resentence a defendant to a non-proportional sentence within the new range and need only show it considered the proper factors when resentencing.") (citing *Chavez-Meza*, 585 U.S. at 116-17).  In the Court's considered judgment, a sentence of 65 months' imprisonment adequately accounts for the advisory guidelines range as a result of Amendment 821, while sufficiently addressing the nature, circumstances, and seriousness of Defendant's offense as well as his history and background, including his post-sentencing rehabilitative efforts.  Such sentence is also appropriate to promote respect for the law, to adequately deter Defendant from engaging in additional criminal conduct, to deter third parties who may be inclined to engage in drug

trafficking activity, and to account for the need to avoid sentencing disparities between Defendant and others with similar backgrounds who have been found guilty of similar conduct. To that end, the Court notes that a sentence of 65 months' imprisonment eliminates any disparity between Defendant and co-defendant Egurrola-Gamboa, another similarly situated truck driver for the DTO, who was sentenced to 65 months' imprisonment.   (Docket No. 1674 at 2).

## IV. CONCLUSION

In summary, Defendant is eligible for a sentence modification under Amendment 821 because he is entitled to a two-level decrease to his offense level given that he qualifies as a zero-point offender under Guideline § 4C1.1(a).  As a result, his advisory guideline range is reduced from 70 to 87 months' imprisonment to 57 to 71 months.  After considering the relevant factors under 18 U.S.C. § 3553(a), as well as public safety and Defendant's post-sentencing conduct, the Court exercises its discretion to reduce his sentence of 70 months' imprisonment to 65 months.  In the Court's estimation, the 65-month term of imprisonment is sufficient, but not greater than necessary, to meet the goals of sentencing for the reasons discussed above.  Accordingly, Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. Amendment 821 – Part B, (Docket No. 1663), is GRANTED as set forth herein.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:         April 18, 2024

cc/ecf:       All counsel of record